[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action, by writ and complaint, claiming a dissolution of the marriage of the parties and other relief, as on file, came to this court on October 4, 1991 with a return day of October 22, 1991, and thence to later dates when the parties appeared for a limited contested trial which was heard on January 14 and 15, 1993.
The Court, having heard the evidence, finds the following:
The wife, DOLORES L. BRIODY, whose maiden name was DOLORES L. LAPETINA, was lawfully married to the husband, LAURENCE P. BRIODY, on September 13, 1958 at Milford, Delaware. One party has resided continuously in this State twelve months next before the date of the filing of the complaint and all statutory stays have expired. The CT Page 3955 marriage of the parties has broken down irretrievably.
A total of eight children were born to the wife since the date of the marriage, seven of said births being by Caesarian Section, and all of said children being the lawful issue of the marriage. The first child died after 13 days. The remaining seven children are all alive and none of them are now minors.
Six of the seven children have already graduated from college. The seventh child, a senior at Boston College, expects to graduate in May, 1993. In addition to being a tribute to the children, it is also a tribute to the mother and father.
Neither of the parties has been married before. The wife became 57 years of age on December 13, 1992 and the husband will become 57 years of age on July 27, 1993. Each of them had completed four years of college with a Bachelor's Degree at the time of the marriage in 1958. The parties met during the time of their college education. Each party was working at the time of their marriage. With the arrival of children, as was not unusual in that era, the wife remained at home to provide care for the children and the husband continued to work regularly and provide the financial resources for the growing family. In general, each party was successful in these responsibilities.
At present, the health of both parties is such that each can pursue employment.
Although the wife has not made any serious attempt at obtaining employment, her employment skills are limited and her prospects of high paying employment are not exceptional. Through their respective counsel, the estimate of the wife's annual earning capacity is $10,000.00 by the wife and $15,000 by the husband.
The husband has been continuously employed since the marriage. He retired from I.B.M. in June, 1989 after 27 years with the company and receives a pension from them slightly in excess of $30,000.00 per year. Additionally, since retirement from IBM, he has continued work as an independent consultant, primarily to the utility industry and has averaged $143,000.00 for the period through 1992. The husband testified that the primary source of his consulting income was from one company which had paid him $10,000.00 per month and that the relationship is now only tenuous and he is uncertain whether he will have any further income from that relationship after June 30, 1993.
The wife and the husband each claimed a variety of circumstances CT Page 3956 which they believe led to the breakdown of the marriage.
Among the wife's claims were that the husband drank heavily, he traveled extensively, he had multiple affairs with other women and that there was a lack of communication between the parties.
Among the husband's claims were that the wife underwent severe behavioral changes and that for a period of approximately a year prior to the wife vacating the marital home, she threatened to end the marriage and said that she was not going to work on the marriage any more.
The Court has reviewed all of the testimony, the exhibits, the financial affidavits of the parties, the briefs of counsel and their proposals for judgment. In addition, the Court has taken into consideration all of the criteria set forth in Connecticut General Statutes Sec. 46b-81 (the assignment of property and transfer of title statute), and Sec. 46b-82 (the alimony statute).
Accordingly, the Court orders as follows:
A decree of dissolution of the marriage shall enter on the grounds of irretrievable breakdown of the marriage.
DIVISION OF CERTAIN ASSETS
The parties shall share equally the IBM Retirement Plan pension that the husband receives from his prior employment at IBM. A Qualified Domestic Relations Order shall enter giving to the wife, a 50% interest in said Plan.
The parties shall share equally in the account balance of the husband's IBM Tax Deferred Savings Plan as of December 31, 1992, together with a pro rata share of any gains or losses in said Plan from December 31, 1992 to the date of distribution. This order shall have no effect on the husband's remaining or future interest in said plan after the distribution set forth herein. A Qualified Domestic Relations Order shall enter giving the wife the 50% interest referred to herein.
The husband shall be the sole owner of the 1990 Accura Motor Vehicle. The wife shall be the sole owner of the 1986 Buick Motor Vehicle. The parties shall immediately sign such documents as are necessary to accomplish this result.
The wife shall be the sole owner of the furniture and furnishings CT Page 3957 located at the former marital residence. The husband shall be permitted to make copies of any photos or videotapes. As to any such copies which have their children as the subject matter, the parties shall share equally the costs of said reproductions.
The husband shall be the sole owner of all of the furniture and furnishings located at his residence.
All of the remaining personal property of the parties including checking and savings accounts, the securities including annuities, bond funds, Keogh accounts, IRAs, other retirement plans and the cash and surrender value of assets of all life insurance policies shall be divided equally by the parties.
In the event the wife desires to own the life insurance on the husband's life, she may do so provided she pays to the husband one half of the cash and surrender value thereon.
REAL ESTATE
The former marital residence located at 212 Mimosa Circle, Ridgefield, title to which is in the name of both parties, shall immediately listed for sale. Initially, the listing shall be with Jan Kavanaugh of the William Pitt Agency in Ridgefield, CT, who shall determine the listing price. Unless otherwise mutually agreed upon, the parties shall reduce the listing price by 3% every three months until the property is sold. The parties are ordered to accept any bona fide offer within 3% of the listing price.
Until its sale, the wife shall have exclusive use and occupancy of said residence and shall be solely responsible for all expenses connected with same until its sale. Both parties are ordered to cooperate in its listing, showing and sale.
The net proceeds of sale, defined as gross selling price less real estate commission, customary closing costs, attorney's fees and any necessary fix up expenses, shall be divided equally by the parties. Fix up expenses shall be determined by the broker.
Any capital gains tax incurred as a result of the sale shall be the equal responsibility of the parties.
ALIMONY
A Qualified Domestic Relations Order having entered with respect to CT Page 3958 the husband's retirement pension from IBM, no alimony is ordered with respect to that item.
The Husband shall pay to the wife as alimony, 1/3 of his gross income from employment, less certain deductions therefrom. Said deductions shall include 10% for business expenses and a deduction for actual self employment taxes. Said income shall include all income from wages, salaries, bonuses, consulting or other fees, commissions, director's fees and compensation for or by reason of past, present or further employment in whatever form received, including payments in cash or in kind, stock or otherwise. It shall not include income from investments, rents, pensions, annuities, life insurance, capital gains, interest, dividends or other passive income.
Said alimony payments shall be for such income earned commencing May 1, 1993 and payment on same shall commence June 1, 1993 and on the first day of each month thereafter until terminated as set forth herein. Said alimony shall terminate upon the happening of the first of the following events:
a) the death of either party;
b) the wife's remarriage;
c) the wife's cohabition under the statute;
d) December 31, 2006.
On or before April 15th of each year, the husband is ordered to forward to the wife a copy of that portion of his Internal Revenue Service Tax Return necessary to enable her to monitor the income that he received.
MEDICAL INSURANCE
If the wife does not have health insurance as an incident of any employment, the husband shall contribute one half of the cost thereof, of a medical insurance policy which shall be equivalent to the medical insurance policy in existence for his benefit, subject to such restriction as may be applicable to any then pre-existing condition of the wife. The husband shall have the right to obtain such policy for his wife's benefit. The husband's obligation under this paragraph shall terminate upon the the happening of the first of the following events: CT Page 3959
1. The death of either party.
2. The remarriage of the wife.
3. The cohabitation of the wife under the Statute.
 4. The wife becoming eligible for Medicare or such similar governmental benefit.
5. Three (3) years from the date hereof. (COBRA)
The wife shall be solely responsible for any unreimbursed medical expense.
INCOME TAXES
The parties shall share in proportion to their income any taxes due or refunds from the Internal Revenue Service and/or the State of Connecticut, for the period of time that they were married.
ATTORNEY'S FEES
The husband shall pay to the wife out of his proceeds of the sale of the real estate, the sum of $2,500.00 towards her counsel fees. Otherwise, each party shall be solely responsible for the payment of the balance of their respective attorney's counsel fees.
LIABILITIES
Each party shall be solely responsible for their own liabilities including those shown on their respective financial affidavits.
RETENTION OF JURISDICTION
The Court retains jurisdiction with regard to the implementation of the Qualified Domestic Relations Orders.
CONTINGENT WAGE EXECUTION
A contingent wage execution is ordered with respect to the husband's alimony obligation.
MORTON I. RIEFBERG JUDGE OF THE SUPERIOR COURT CT Page 3960